FORD MOTOR COMPANY v. UNITED STATES

**No. 8067.**—Entered at Detroit, Mich.
Entry No. 9168.

(Decided December 5, 1951)

*Duane D. Freese* and *John A. Moekle* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh* and *Samuel D. Spector*, special attorneys), for the defendant.

MOLLISON, Judge: The merchandise involved in this appeal consists of rough grey iron castings which were sold and exported by the Ford Motor Company of Canada, Ltd., to the Ford Motor Company of Dearborn, Mich. The pattern equipment which was used by the seller and exporter in making these castings was owned by Ford Motor Company of Dearborn, Mich., the importer, in the United States and was manufactured in this country.

The single issue involved in this appeal for reappraisement is whether the pattern equipment designed for use in the manufacture of rough iron castings to be used as manifolds in automobiles should be properly included as an item in the cost of production of the iron castings. It was agreed by counsel for both sides that there was no foreign, export, or United States value applicable and that the proper basis of value to be applied is the cost of production, as defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)). The said section reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or pro-

duction of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular, merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It was agreed between the parties at the trial that the following unit costs, exclusive of the cost of the pattern equipment, were proper items to be included in the cost of production in the making or manufacture of the rough iron castings involved:

| Right-hand Castings (8BA–9430) | Left-hand Castings (8BA–9431) |
|---|---|
| (Canadian) | (Canadian) |
| Material and labor_____ $0. 3464 | Material and labor_____ $0. 2957 |
| Usual general expenses_____ 0. 3097 | Usual general expenses_____ 0. 3021 |
| Total each (Canadian)_____ $0. 6561 | Total each (Canadian)_____ $0. 5978 |

It was further agreed by the parties that the profit ordinarily added was 10 per centum. It was also agreed between the parties that the above items of cost would represent the cost of production of the rough iron castings if the court should find that the cost of the pattern equipment is not properly included as an item or element of the cost of production; and it was also agreed between the parties that if the court should hold that the cost of the pattern equipment was a proper element of cost in the manufacture or making of the rough iron castings, then the sum of $50,821, divided by 20,000 (the number of castings ordered by the importer), i. e., the proportionate part of that sum for each casting, or unit pattern cost, should be added to the agreed items as above stated to arrive at the correct dutiable value.

The rough grey iron castings were appraised as follows:

8BA–9430 (auto) exh mflds at $3.41538 each net unpkd Canadian dollars.

8BA–9431 (auto) exh mflds at $2.9923 each net unpkd Canadian dollars.

The appraised value apparently includes for each casting the proportionate part of the cost of the pattern equipment admittedly used in the making of the castings, which proportionate part or sum was arrived at by dividing the total cost of $50,821 by 20,000, the number of castings imported. It therefore appears that if the cost

of the patterns is a proper part of the cost of production, the appraised values are correct.

It was admitted at the trial that the pattern equipment itself was of American manufacture and was consigned by the Ford Motor Company of Dearborn, Mich., to the Ford Motor Company, Ltd., of Canada at "no charge" and that the exporter or seller of the rough iron castings made no charge of any kind to the importer for the pattern equipment and that the importer, the Ford Motor Company of Dearborn, Mich., paid for the pattern equipment in a fashion or manner separate from the transaction under which the rough iron castings were bought and sold; it was further proved beyond doubt that the title to the pattern equipment remained at all times in the importer and that the pattern equipment had at the time of the trial already been returned to the United States and advisorily classified by the appraiser as free of duty under paragraph 1615 as American goods returned, which had not been advanced in value or improved in condition by any process of manufacture or other means.

The importer makes three claims to substantiate its contention that the cost of the pattern equipment should not be included as an item in the cost of production of the rough iron castings. First, it is contended that the Congress, in enacting paragraph 1615 of the Tariff Act of 1930, providing for free entry of American goods when returned to the United States, expressed an intention that such pattern equipment should not be subject to customs duty when returned not advanced in value or improved in condition, and as a consequence the customs authorities should not be permitted to accomplish indirectly what the Congress had specifically forbidden. However, no such intention appears from the language or the intent of any congressional enactment insofar as the valuation of the *rough iron castings* involved herein is concerned. Conceding that the *pattern equipment itself* is entitled to free entry, when the *pattern equipment itself* has been accorded free entry, then all of the appellant's rights under paragraph 1615 have been satisfied. What is involved in the case before us is *rough iron castings* which have been manufactured or produced with the *use* of the pattern equipment which has imparted to the rough iron castings its own shape, form, design, and measurements in such manner that the rough iron castings may be used as exhaust manifolds in the manufacture of certain automobiles. It is admitted that the pattern equipment was used in the manufacture or processing of the rough iron castings imported and it is obvious that the pattern equipment was intended to impart a certain shape, form, and design to the castings according to certain precise measurements. The language of the cost-of-production statute is embracive and the pattern equipment is a necessary material employed in the manufacture or production of the rough iron castings; it also seems plain that the pattern

equipment when used for the production of the castings here involved became an integral part of the process employed in manufacturing or producing the merchandise in question.

It is further claimed that nowhere in section 402 (f), *supra*, is there any specific requirement for the inclusion of the cost of such items as pattern equipment. The terms of the above section of the statute are embracive of the cost of all the materials used or employed in the manufacture or production of the rough iron castings and it seems clear that the statute was intended to include every element of cost which goes into the manufacture or production of the article. *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T. D. 41503; *University of Chicago Press* v. *United States*, 24 Cust. Ct. 580, Reap. Dec. 7809; *Carey & Skinner, Inc.* v. *United States*, 3 Cust. Ct. 600, Reap. Dec. 4663.

The case of *Ravenna Mosaics (Inc.)* v. *United States, supra*, seems substantially on all fours with the instant case. In the former case, certain mosaic pictures and hand-painted glass windows were imported. The pictures and windows had been manufactured by a German manufacturer with the use of certain plans or sketches which had been prepared and paid for in the United States and sent to the German manufacturer with the order. It was argued that since the plans and sketches had cost the German manufacturer nothing, they were not properly a part of the cost of production. However, the third division of this court held that the cost of production of imported merchandise includes every element of cost entering into the production thereof; and that in ascertaining the cost of production of imported merchandise, it is proper to include the cost of plans and sketches, without regard to the country of origin and without regard to whether they were paid for by the manufacturer or the importer. The court ruled that the section of the statute here involved neither specified nor implied that the items of cost should be confined to those actually paid for by the manufacturer himself.

The holding in the *Ravenna Mosaics (Inc.)* case, *supra*, was followed in the recent case of *University of Chicago Press* v. *United States, supra*. In the case of *Carey & Skinner, Inc.* v. *United States, supra*, it was held that the proportionate part of the expense of preparing certain blueprints used for the designing, construction, and installation of specially designed paper mill machinery was a proper element entering into the cost of production of the machinery there involved. The court in the latter case thought that the decision in the case of *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D. 48900, was controlling. In the *Lionel Trading Co.* case our appellate court held that an amount charged by the owner of certain designs for paper boxes and molds for glass bottles to cover the cost of making, producing, and furnishing the designs and molds to the actual manufacturer

of the boxes and bottles was properly a part of the cost of production under the statute. I am of the opinion that the cited decisions of the Customs Court and the opinion and principles of law established by our appellate court in the *Lionel Trading Co.* case are controlling and determinative of the issue here.

It is further claimed that in order to determine the meaning of "cost of production" as used in the statute we must look to the custom of the foundry trade; that in Canada invariably it is the custom for the purchaser of castings to supply the foundry with the pattern on a no-charge basis, and which pattern equipment after use is returned to the purchaser free of charge. At the trial, plaintiff's witness Gregory testified that it was the invariable practice and custom in Canada for the purchaser of castings to furnish and supply the foundry the pattern on a no-charge basis and to return the pattern to the purchaser free of charge after use and not to include as a part of its charge for the castings produced, any cost for the patterns.

Counsel for the defendant made proper and timely objection to the questions propounded to elicit the testimony above, which was allowed, subject to the objection and subject also to a motion to strike the testimony, with the ruling on the competency, relevancy, and materiality reserved until the decision of the case.

The statute embraces every element of the cost of producing an article regardless of who pays for the item which goes into its production, whether by way of materials, fabrication, manipulation, or other process employed. The arrangement or custom whereby the purchaser of the castings furnishes or supplies the foundry patterns for use in manufacturing the castings is primarily to serve the purposes of the purchasing importer who wishes to have the castings fabricated accurately and truly according to a certain definite shape, form, and design and also to certain precise measurements to permit the convenient use of the casting as a part of a contemplated automobile. The arrangement is for the convenience of the parties involved and the custom has no material bearing upon the question of whether the proportionate cost of the pattern equipment allocated to the making of each rough iron casting is a proper element of the cost of production under section 402 (f). And, moreover, as has been held in the cited cases, section 402 (f) embraces and contemplates such an element of the cost of production of the iron castings without regard to whether the pattern equipment used in making the castings was paid for by the manufacturer or the importer, and without regard to the country in which the pattern equipment originated, or whether the pattern equipment was of American origin and was subsequently, after being used, returned to the United States, and admitted and classified free of duty. The objection to the testimony of the witness Gregory in regard to the custom and practice of supplying Canadian

fabricators patterns on a no-charge basis, and the noninclusion of any charge for the cost of the pattern in the charge for the castings, is sustained and the motion of the defendant to strike said testimony is allowed.

The case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305, cited by counsel for the plaintiff, is distinguishable from the facts and situation in this case. In the *Dunhill* case the question there involved was whether a purchase tax, which arose *after* the actual manufacture and processing of the goods, was a part of the "usual general expenses" contemplated by the cost-of-production statute, *supra*, whereas in this case the item of pattern cost is one which arose in the actual fabrication and processing of the imported articles, to wit, the castings.

The situation with respect to the printing rollers involved in Reappraisement Circular 34123, cited by counsel for the plaintiff, is also distinguishable from that in the case at bar. In that case, certain designs for wallpaper were made in the United States, which designs were sent abroad for the purpose of manufacturing the steel and brass rollers for the printing of the wallpaper. The question involved was whether the cost of the designs was properly to be added to the *foreign value* of the rollers, and the court properly held that it was not. As stated by counsel for the defendant in the brief filed in its behalf:

\* \* \* The legal principles governing the ascertainment of foreign value are wholly different from the legal principles governing the ascertainment of the cost of production of an article.

The effort on the one hand (foreign value) is to establish the price at which such or similar articles are *offered for sale* abroad; the effort on the other is to establish the *cost* of making the article. Where the inquiry is, as in foreign value, the price at which an article is offered for sale, the elements of its cost are immaterial. On the other hand, such elements of cost are most material when the inquiry is the cost of production.

There is ample authority in this court and in the appellate court to the effect that the costs of designs, patterns, blueprints, and molds used in the making of articles are proper elements of the cost of production under section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)).

Upon the evidence and the record in this case I find the following facts:

1. That the merchandise herein involved consists of rough grey iron castings exported from Canada on or about March 2, 1948.

2. That at the time of exportation of such castings such or similar merchandise was not freely offered for sale in the ordinary course

of trade in the country of exportation either for home consumption or for export to the United States.

3. That at the time of exportation of such castings such or similar merchandise was not freely offered for sale in the ordinary course of trade in the principal market of the United States.

4. That, exclusive of the cost of certain pattern equipment referred to in finding No. 6, the cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar castings, at a time preceding the date of exportation of the particular castings under consideration which would ordinarily permit the manufacture or production of the particular castings under consideration in the usual course of business was as follows:

> Right-hand castings (8BA–9430) Canadian $0.3464 each
> Left-hand castings (8BA–9431) Canadian $0.2957 each

5. That the usual general expenses in the case of such or similar merchandise were:

> Right-hand castings (8BA–9430) Canadian $0.3097 each
> Left-hand castings (8BA–9431) Canadian $0.3021 each

6. That the cost of the pattern equipment referred to in finding No. 4, which was used in the manufacture and production by the Ford Motor Company of Canada, Ltd., of 20,000 rough grey iron castings, was the sum of $50,821.

7. That there was no cost for containers or coverings, or any costs, charges, or expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States.

8. That the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind is 10 per centum.

I conclude as matters of law:

(1) That the proper basis for the determination of the value of the merchandise involved in this appeal for reappraisement is the cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930.

(2) That the cost of the pattern equipment which was used in the making of 20,000 rough grey iron castings is a proper part of the cost of production of the imported merchandise and that the proportionate part of the pattern equipment cost for each of 20,000 rough grey iron castings should be added to the unit cost for materials and labor set forth in finding No. 4.

(3) That the cost of production of the instant merchandise is as returned by the appraiser.

Judgment will be entered accordingly.