(A. R. D. 9)

FORD MOTOR COMPANY *v.* UNITED STATES

Entry No. 9168.

Second Division, Appellate Term

(Decided November 25, 1952)

Duane D. Freese and John A. Moekle for the appellant.

Charles J. Wagner, Acting Assistant Attorney General (Samuel D. Spector, special attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment of a single judge sitting in reappraisement, reported as *Ford Motor Company* v. *United States*, 27 Cust. Ct. 492, Reap. Dec. 8067. The merchandise in issue consists of rough iron castings which were manufactured in Canada and shipped by the Ford Motor Company of Canada, Ltd., to the Ford Motor Company of Dearborn, Mich. Those castings invoiced as "8BA–9430 (auto) exh mflds" were entered at 65 cents, Canadian currency, each, and appraised at $3.41538, Canadian, each, net unpacked. Such as were invoiced as "8BA–9431 (auto) exh mflds" were entered at 55 cents each, and appraised at $2.9923 each, net unpacked, similarly, in Canadian currency.

The parties to this action have agreed that there is no foreign, export, or United States value for the instant merchandise, and that cost of production, as defined in section 402 (f) of the Tariff Act of 1930, is the proper basis of appraisement. Said section reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The only point of dispute between the litigants herein is whether the cost of certain pattern equipment used in the production of the imported rough iron castings should be added to the other costs incurred in the manufacture of said articles in determining cost of production. The appraised values include this item; the entered values do not. In its decision, the trial court held that the appraised values were the proper values for the merchandise at bar.

The rough iron castings were designed for use as exhaust manifolds in engines of automobiles manufactured by the importer. It appears from a stipulation of the respective parties, entered into during the course of the trial, that the unit costs for producing the imported merchandise, exclusive of the cost of the pattern equipment, were as follows:

|  | Right-hand castings (8BA–9430) (Canadian) | Left-hand castings (8BA–9431) (Canadian) |
|---|---|---|
| Material and labor | $0. 3464 | $0. 2957 |
| Usual general expenses | 0. 3097 | 0. 3021 |
|  | 0. 6561 | 0. 5978 |
| Profit (10 per centum) | 0. 06561 | 0. 05978 |
|  | $0. 72171 | $0. 65758 |

As for the pattern equipment, it was agreed that its cost was $50,821, Canadian; and that, in the event that such item properly forms an element in the determination of the value of the involved rough iron castings, it shall be prorated over the cost of the 20,000 castings which constituted the initial purchase order placed by the Ford Motor Company of Dearborn, Mich. It further affirmatively appears that said pattern equipment is entirely of United States manufacture; that it was paid for by the importer separately and apart from any charge for the castings; that it was consigned to the Canadian company on a "no charge" basis; and that no charge of any kind was made by said company to the importer for the use of this equipment. After having been used in Canada, the pattern equipment

was returned to the United States, without having been advanced in value or improved in condition. It was entered free of duty pursuant to the provisions of paragraph 1615 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and advisorily classified as entered.

Because of appellant's reliance upon said provision as having a possible bearing upon the disposition of the issue raised herein, we here quote therefrom:

PAR. 1615. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

* * * * * * *

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

It seems fairly inferable from the stipulation of the parties that the pattern equipment in question which was furnished to the Ford Motor Company of Canada served that company as the form, mold, or design from which the imported castings were forged, and that, without the same, the castings in the shape, size, and dimensions required by the Ford Motor Company of Dearborn, Mich., could not have been produced. The use of the pattern equipment being essential to the ultimate manufacture of the castings, clearly such pattern equipment is an item entering into the cost "of fabrication, manipulation, or other process employed in manufacturing or producing such * * * merchandise." Had, therefore, the manufacturer provided the same, at its own cost and expense, there could be no doubt of the propriety of including that item in the computation of the cost of material and of fabrication within the requirements of section 402 (f) (1), *supra*.

This principle was expressly affirmed by our appellate court in the case of *Lionel Trading Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D. 48900, wherein the court stated:

* * * It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and moulds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. The term "in manufacturing or producing such or similar merchandise" in paragraph (1) of section 402 (f), *supra*, must be read in connection with the whole provision concerning cost of production.

If then the cost of this equipment is an element properly falling within the costs specified in said section 402 (f) (1), and we do not see how any other view can prevail, we regard it as immaterial that such cost was borne by one other than the manufacturer of the article being appraised. Nowhere in said section do we note any requirement

that the cost shall have been one incurred by the manufacturer who has produced the goods. The statute provides only that the specified costs, among which we believe the cost of patterns, designs, plans, or molds must be included, together with the usual general expenses, the costs of all containers, and so forth, and the prescribed profit shall constitute the cost of production of imported merchandise. Its purpose is to derive, not the manufacturer's actual cost, but the actual cost of manufacture. This purpose is manifest throughout the whole section covering cost of production.

As pointed out in the decision of the trial judge, this question was considered by the third division of this court in the case of *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T. D. 41503. There, the American importer made and paid for certain plans and sketches which were forwarded to a German manufacturer to be used in the production of mosaic pictures and windows ordered from the latter. After stating that "there can be no doubt that the cost of the plans was a part of the cost of production of the merchandise in these cases," the court went on to say:

It is also contended that, as the plans cost the manufacturer nothing, they were not properly a part of the cost of production. If that were true, then if the glass had been furnished to the manufacturer by the importer that item would have cost the manufacturer nothing and could not be taken into account in arriving at the cost of production. We do not think the items of cost should be confined to those actually paid for by the manufacturer himself. The law does not so specify.

See also in this connection the case of *J. H. Cottman & Co.* v. *United States* and *United States* v. *J. H. Cottman & Co.*, 20 C. C. P. A. (Customs) 344, T. D. 46114.

The case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305, is relied upon by appellant as being in conflict with this view, and as tending to establish the admissibility of certain testimonial evidence taken at the trial, but subsequently stricken from the record on motion of counsel for the Government. The witness whose testimony was thus stricken was one Harold M. Gregory, of Walkerville, Ontario, Canada, who had been engaged in the production of grey iron castings for over 30 years. He was called to give evidence with respect to the custom and practice in Canadian foundries, to the effect that manufacturers of castings ordinarily obtain pattern equipment from the purchaser of the castings and return the same to him after the castings have been forged.

In the view here taken that the cost of pattern equipment constitutes an element in the cost of fabrication of articles produced as the result of the use of such equipment, irrespective of whether such cost is borne by the manufacturer, evidence of the practice in the trade of obtaining pattern equipment from the purchaser of the castings,

without cost to, or charge by, the manufacturer is obviously immaterial. Moreover, since the plain wording of the statute encompasses, and was designed to include, all costs actually entering into the manufacture of the article which is being valued upon a cost of production basis, any evidence of a practice in the trade of obtaining material or equipment without cost to the particular manufacturer becomes clearly irrelevant. The trial court, therefore, very properly allowed the motion to strike said testimony from the record.

Likewise, the trial court properly touched upon the precise point of distinction between the situation involved in the case at bar and that with which the court in the *Dunhill* case, *supra*, was concerned. There, the question was whether a so-called British purchase tax, which attached when a registered dealer of goods chargeable with the tax sold the same to a retail dealer, was a part of the usual general expenses incurred by the manufacturer pursuant to paragraph 2 of section 402 (f). We quote from the opinion of the trial court:

* * * In the *Dunhill* case the question there involved was whether a purchase tax, which arose *after* the actual manufacture and processing of the goods, was a part of the "usual general expenses" contemplated by the cost-of-production statute, *supra*, whereas in this case the item of pattern cost is one which arose in the actual fabrication and processing of the imported articles, to wit, the castings. [Italics quoted.]

The fact that the court in the *Dunhill* case, *supra*, held that the purchase tax was not a part of the manufacturer's usual general expenses, does not preclude a finding that an item of cost of an element absolutely essential to the manufacture of an article is a proper item to be included in arriving at the cost of production of the completed article, whether or not the manufacturer of the article actually incurred such cost. The fact that the castings in the instant case could not have been produced without the aid of the involved pattern equipment, in and of itself, suffices to sustain the validity of allocating a portion of the cost of such equipment to the cost of producing each of the 20,000 castings ordered.

Counsel for appellant takes the position that since the cost of designs and the like, made and paid for in the United States, are not part of the *foreign value* of imported merchandise, citing Reappraisement Circular 34123, involving printing rollers, and since "Cost of production under the statute is simply an *alternative method for arriving at the export or foreign market value* of an article for duty purposes [italics quoted]," the pattern cost is not a proper item to be considered under cost of production.

The premises are sound, and have substance, but the conclusion is *non sequitur*, and is without legal support. A very effective answer to

this argument may be found in the *Dunhill* case, where the following appears:

In our opinion, since it was agreed that the valuation of the merchandise was based on cost of production the pertinent items of the paragraph must be strictly followed in calculating such cost, and any reference to any other kind of value, such as substitute or constructive values, is irrelevant and need not be discussed.

We come now to a consideration of appellant's contention that since paragraph 1615 (a), *supra*, permits the free entry into the United States of the pattern equipment as American goods "when returned after having been exported, without having been advanced in value or improved in condition," the act of including the cost or value of that equipment in the value of the castings is an attempt to collect indirectly a duty which cannot be collected directly, and that the intent of Congress not to tax American goods returned being of paramount consideration must be effectuated. It should be clearly understood, however, that that with which we are here concerned is the value of rough iron castings, based upon the cost of producing them. Except insofar as the pattern equipment affects such cost, the same is not a subject of controversy before this court. Neither the value, nor the classification, of the pattern equipment is in issue in this case.

Paragraph 1615, *supra*, being a grant of a privilege instead of a right, must be strictly construed, its scope and application confined to the special circumstances outlined by its provisions. *Pelz-Greenstein Co.* v. *United States*, 17 C. C. P. A. (Customs) 305, T. D. 43718. The paragraph bestows no unlimited and unconditional freedom from assessment of duty. It is hedged and circumscribed not alone by the specificity of the language employed by Congress but also by such regulations as to proof of identity and compliance with its conditions as are prescribed by the Secretary of the Treasury. Thus, an unmistakable congressional purpose to restrict the privilege of free entry is evidenced. The argument, nevertheless, that the provisions of paragraph 1615, *supra*, should operate to prevent a charge for the use of American-made equipment in the manufacture of foreign-made merchandise from being included in the cost of producing such foreign goods calls for an extension of the privilege which is plainly unwarranted.

Under these circumstances, the holding of the trial court that the cost of the pattern equipment was a proper element to be included in ascertaining the cost of production of the merchandise must be affirmed. It appears, however, that upon this holding the trial court predicated a finding that the appraised values were the proper values for the merchandise at bar. A computation of the stipulated figures, in the light of the finding that the cost of the pattern equipment was a part of the cost of production of the castings, reveals the following:

| | Right-hand castings (8BA-9430) (Canadian) | Left-hand castings (8BA-9431) (Canadian) |
|---|---|---|
| Material and labor | $0. 3464 | $0. 2957 |
| Pattern cost | 2. 54105 | 2. 54105 |
| Usual general expenses | 0. 3097 | 0. 3021 |
| | 3. 19715 | 3. 13885 |
| Profit (10 per centum) | 0. 31971 | 0. 313885 |
| | $3. 51686 | $3. 452735 |

On the record herein, we make the following findings of fact:

1. That the merchandise herein involved consists of rough grey iron castings exported from Canada.

2. That at the time of exportation of such castings such or similar merchandise was not freely offered for sale in the ordinary course of trade in the country of exportation either for home consumption or for export to the United States.

3. That at the time of exportation of such castings such or similar merchandise was not freely offered for sale in the ordinary course of trade in the principal market of the United States.

4. That, exclusive of the cost of certain pattern equipment, the cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular castings under consideration which would ordinarily permit the manufacture or production of the particular castings under consideration in the usual course of business, was as follows:

Right-hand castings (8BA-9430)   Canadian $0.3464 each
Left-hand castings (8BA-9431)   Canadian $0.2957 each

5. That the usual general expenses in the case of such or similar merchandise were:

Right-hand castings (8BA-9430)   Canadian $0.3097 each
Left-hand castings (8BA-9431)   Canadian $0.3021 each

6. That the cost of the pattern equipment which was used in the manufacture and production by the Ford Motor Company of Canada, Ltd., of 20,000 rough grey iron castings, was the sum of $50,821, or $2.54105 per unit.

7. That there was no cost for containers or coverings, or any costs, charges, or expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States.

8. That the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of

manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind, is 10 per centum.

We therefore conclude as matter of law:

1. That the proper basis for the determination of the value of the merchandise involved in this appeal for reappraisement is the cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930.

2. That the cost of the pattern equipment which was used in the making of 20,000 rough grey iron castings is a proper part of the cost of production of the imported merchandise and that the proportionate part of the pattern-equipment cost for each of 20,000 rough grey iron castings should be added to the unit cost for materials and labor set forth in finding No. 4.

3. That the cost of production of the instant merchandise is as follows:

> Right-hand castings (8BA–9430) Canadian $3.51686 each
> Left-hand castings (8BA–9431)  Canadian $3.452735 each

4. The decision and judgment of the trial court will be modified to the extent indicated.

Judgment will be entered accordingly.