UNIVERSITY OF CHICAGO PRESS *v.* UNITED STATES

No. 7809.—

Entry No. 3668.

(Order dated March 20, 1950)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

ORDER

MOLLISON, Judge: The merchandise involved in this appeal for reappraisement consisted of 200 unbound copies of a book entitled "The Small Industries of Japan," entered at Chicago and imported by the University of Chicago Press. The books were entered at 80 cents per copy, plus packing, and were appraised at $2.14 per copy, plus packing. The books were entered and appraised on the basis of cost of production and it is agreed by both plaintiff and defendant that cost of production, as defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), is the proper basis for determining the dutiable value of the merchandise. The importer contends that the dutiable value is, in fact, less than the entered value.

The plaintiff offered the testimony of two witnesses: Miss Elizabeth Downing, formerly connected with the Institute of Pacific Relations from 1936 to 1943, and Mr. H. B. Seldon, United States appraiser of merchandise at Chicago. In addition, on behalf of the plaintiff, there were offered and received in evidence the affidavit of John Henry Searle of the firm of Kelly & Wash, Ltd., of Shanghai, the exporter, and several exhibits consisting of bills submitted by the exporter and checks given to the exporter, as well as a page of quotations on printing rates. No testimony or other evidence was offered by the defendant.

The imported material consisted of 200 sets of flat sheets, unbound, which were to be published in this country under the imprint of the University of Chicago Press. The subject matter of the unbound books was the result of a research study made by the Japanese Council, one of 11 principal national member councils of the Institute of Pacific Relations, a nonpolitical and nonprofit research organization whose purpose was study of the problems of the Pacific area and publication of the results of research in books and pamphlets in small numbers for distribution to academic circles.

The book in question had originally been printed in pamphlet form, in seven pamphlets, each one devoted to a separate industry of Japan, sometime in 1936 in Shanghai. About a year later the Institute decided that the papers were sufficiently important to be published in one book.

It seems that the Institute made grants of funds from time to time and at nonregular intervals to its various national councils to enable them to carry on their research work and to supplement their local funds. The Institute made a grant of $3,000 to its Japanese Council, but the record does not show the exact date when the grant was made. It seems clear, however, that the book in question, "The Small Industries of Japan," was part of a standards of living study in export industries made by the Japanese Council researchers and that the grant of $3,000 was made by the Institute for a research project or study which comprised subjects other than, or in addition to, "The Small Industries of Japan."

The record shows that the grant by the Institute to the Japanese Council was a general one for a long-term research program and that part of the material and data gathered during the general research program was used for the compilation of the seven pamphlets already mentioned. From the evidence of Miss Downing, it may be reasonably inferred that no specific grant of money or particular sum of money was given to the Japanese Council by the Institute for the specific purpose of compensation for the work of making the research study which resulted in the book here in question and the original seven pamphlets published by the Institute. None of the local funds of the Japanese Council was used in the research which resulted in the book and pamphlets. All of the research work was done by Japanese who were members of the Japanese Council. It is Miss Downing's testimony that there was no way to determine what part of the general expenses of the Japanese Council was chargeable or attributable to the making of that part of the research which resulted in "The Small Industries of Japan."

It appears that when it was decided to publish the seven pamphlets in one book (of which 500 copies were to be printed), there were certain editorial corrections which had to be made, as well as the addition of an introductory chapter. There does not seem to be any question but that the entered value represents the cost to the Institute of Pacific Relations for the printing of the book, that is to say, the typesetting, paper, and printing, including the general expenses and profit of the printer, and packing. In fact, the actual cost appears to have been somewhat less than the entered value. The basic difference between the value claimed by the plaintiff and the appraised

value, however, is that there are not included in the entered value any of the following costs:

(1) Cost of compilation of the original manuscript.

(2) Cost of the editorial corrections.

(3) Cost of writing the introductory chapter.

In arriving at the appraised value, according to his testimony, the appraiser considered that $500 of the grant of $3,000 was referable to the foregoing three costs, and since there were 500 copies of the book printed, on a unit basis these costs represented $1 per copy. This amount, added to the cost to the Institute of the printing and the packing, and with the statutory minima of 10 per centum and 8 per centum for general expenses and profit, respectively, resulted in the appraised value.

Citing the case of *United States* v. *F. W. Myers & Co., Inc. (Sun Life Assurance Co. of Canada)*, Reap. Circ. 2227, it is contended by the plaintiff that the manuscript, corrections, and introductory work involved no expense to the Institute and hence should not be included in the calculation of cost of production. The *Myers* case involved an importation from Canada by an insurance company of loose-leaf form books for distribution to its agents in the United States as a company publication. Entry and appraisement were made on the basis of cost of production, and the entered value represented only the cost to the company of the charge made by the printer for printing and paper. The appraised value included a sum representing the cost of preparing and arranging the data for publication, but it was held by the Customs Court that the cost of this latter work, having been performed by employees of the company as a part of their regular duties for which they received no extra compensation, was not properly a part of the statutory cost of production.

The logic of this ruling appears to be faulty and at variance with other rulings of this and our appellate court. It could scarcely be argued that if the printer had performed his work gratis, or if the forms had actually been printed by company employees as part of their regular duties, the cost of such work would not be part of the cost of production as formulated in the statute. This is the tenor of the decision of the third division of this court in the case of *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T. D. 41503, wherein it was held that the cost of production of imported merchandise included every element of cost entering into the production thereof. In that case, certain mosaic pictures and hand-painted glass windows were imported. The pictures and windows had been manufactured by a German manufacturer with the use of certain plans or sketches which had been prepared and paid for in the United States and sent to the German manufacturer with the order. It was there argued that since the plans and sketches had cost the German manu-

facturer nothing they were not properly a part of the cost of production. In answering that argument the court said:

* * * If that were true, then if the glass had been furnished to the manufacturer by the importer that item would have cost the manufacturer nothing and could not be taken into account in arriving at the cost of production. We do not think the items of cost should be confined to those actually paid for by the manufacturer himself. The law does not so specify.

So in the case at bar. The mere fact that the manuscript was furnished to the printer does not establish that its cost was not a part of the cost of production.

Of like import is the holding in the case of *Lionel Trading Co.* v. *United States*, 24 C. C. P. A. (Customs) 432, T. D. 48900. There, it was held that an amount charged by the owner of certain designs for paper boxes and glass bottles to cover the cost of making, producing, and furnishing the designs and molds to the actual manufacturer of the boxes and bottles, the said charge being paid by the importer and not by the actual manufacturer of the boxes and bottles, was properly a part of the cost of production. The court there said:

We are in agreement with the tribunal below in their holding that upon the record made, the said 28 per centum which was charged by Corday was, by the appraiser, properly added to the entered value to make up the cost of production which constituted the dutiable value. The record shows that the 28 per centum was added by Corday as profit and overhead. It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and molds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. The term "in manufacturing or producing such or similar merchandise" in paragraph (1) of section 402 (f), *supra*, must be read in connection with the whole provision concerning cost of production.

The record in the case at bar does not indicate that the original manuscript and revisions were produced without cost or charge. There was a grant of $3,000 for the purpose of making studies, the results of which were to be published. The plaintiff's witness, Miss Downing, stated that no specific fee was paid for the work of compilation of the text of the book here involved, but she admitted that part of the grant was used for that purpose.

It is the testimony of Appraiser Seldon that the figure of $1 per copy as the cost of the text material was arrived at by comparison with the cost of books published under similar circumstances, but he later admitted that by that statement he meant books similar in some physical aspects, but different so far as textual content, title, and subject matter were concerned.

It would seem to the court to be clear that the cost of textual matter for one book would not necessarily be the same or even nearly the same as the cost of textual matter for another book on a different subject matter. On the other hand, the court recognizes that since the studies

involved were undertaken with the ultimate purpose of publishing and distributing the results, some cost was involved in the production of the textual material used.

For these reasons the court believes that the interests of justice would best be served by restoring the case to the next Chicago calendar for the purpose of permitting the plaintiff to submit evidence, if possible, to establish the cost of the textual material used in the books involved, and of permitting the defendant to rebut the same if it is so desired.

It is so ordered.