(Reap. Dec. 10675)

FERGUS IMPORTED CARS, INC. *v.* UNITED STATES

Entry No. 744881.

(Decided February 5, 1964)

*Wolfe & Wolfe* (*Paul Wolfe* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

RAO, Judge: This is an appeal for reappraisement of an importation of 40 passenger automobiles, manufactured and exported from Germany by Carl F. W. Borgward GmbH of Bremen. The cars involved are identified as Borgward Isabella automobiles of the following types—Sedan (Limousine), Model TS, Model TS Deluxe, and Combi.

The details of appraisement and of the contention of plaintiff with respect to the alleged proper value of said merchandise are set forth in the following stipulation of facts agreed upon by counsel for the respective parties:

1. It is hereby stipulated and agreed by the undersigned, subject to the approval of the Court, that at the time of exportation of the imported automobiles, such or similar automobiles were not freely offered for sale or sold in the country of exportation for home consumption or for export to the United States, or freely offered for sale or sold in the United States for domestic consumption, as defined in Section 402a (c), (d) and (e) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956.

2. It is further stipulated that said automobiles are subject to appraisement on the basis of cost of production as defined in Section 402a(f) of said amended Tariff Act.

3. It is further stipulated that said automobiles were appraised on the basis of cost of production as shown in the schedule "A" in German Marks (hereto annexed and forming a part of this stipulation), plus extras in United States dollars shown in red ink amounts as items X on the invoices. The papers used upon entry are to be considered in evidence without being specifically so marked.

4. Plaintiff concedes that the item indicated in the schedule under item 1 therein, in paragraph "3" supra as "Development and testing including Design", refers to the item shown in Sub Exhibit "A" and "G" as "Entwicklung, Versuche", but plaintiff contends that it is a capital item and forms no part of said cost of production, alternatively, if the Court holds said item is not a capital item, it is plaintiff's claim that said item is a usual general expense. Plaintiff concedes that the item indicated as "Inspections station labor:" is the same as the item shown in Sub Exhibits "A" and "G" as "Kontrallstellen", and contends however, that it is a usual general expense.

5. The defendant contends that said disputed items referred to in paragraphs 3 and 4, form part of the cost of materials and fabrication, etc., and are properly part of the statutory cost of production as determined by the appraiser.

6. It is further stipulated that all other items making up the cost of production as determined by the appraiser are correct.

7. It is also agreed that the certified report of Arno Hellthaler, Acting Senior Customs Representative, Frankfurt, Germany, dated September 22, 1959, file #3–709/952 consisting of two pages and attached Exhibits "A" and "G" be received in evidence and marked Defendant's collective Exhibit "1".

8. It is further stipulated that this case be submitted for decision upon the foregoing stipulated facts and Defendant's Collective Exhibit "1", and that the plaintiff have up to 60 days after the date of notice of the Courts' approval of this stipulation to file its brief herein, and that the defendant's have up to 60 days after service upon it of plaintiff's brief, within which to file its brief.

SCHEDULE A

| | ISABELLA SEDAN | ISABELLA TS | ISABELLA TS DELUXE | ISABELLA COMBI |
|---|---|---|---|---|
| I. Sec. 402a(f)(1) Material & Fabrication, etc. | | | | |
|   A. Development & Testing including design | DM47 | DM58 | DM61 | DM49 |
|   B. Inspections station labor | 77 | 96 | 100 | 80 |
|   C. Balance of Mat. & Fabric. | 4506 | 5061 | 5240 | 4775 |
| TOTAL—Mat. & Fabric. | 4630. | 5215. | 5401. | 4904. |
| II. Sec. 402a(f)(2) Usual General Expenses (added Stat. min 10%) | 463. | 521. 5 | 540. 1 | 490. 4 |
| TOTAL—MAT, FAB & GEN'L EXP. | 5093. | 5736. 50 | 5941. 10 | 5394. 40 |
| III. Sec. 402a(f)(3) Packing | NONE | NONE | NONE | NONE |
| IV. Sec. 402a(f)(4) Profit: | | | | |
|   A. Home Market | 410. 90 (8. 068%) | 599. 46 (10. 45%) | | |
|   B. Export to U.S. (actual) | | | 608. | |
|   C. Statutory 8% min. | | | | 431. 55 |
| TOTAL STATUTORY COST OF PRODUCTION | DM5503. 90 | DM6335. 96 | DM6549. 10 | DM5825. 95 |

As is indicated by the foregoing stipulation, defendant's collective exhibit 1 is a report of the acting senior customs representative of Frankfurt, Germany. It contains a résumé of an interview with several officials of the manufacturer, identified as the export manager, his assistant, the assistant manager, and the calculator, who, it is said, furnished the information therein set forth. Insofar as the items in dispute are concerned, the report states:

The item "inspection stations labor etc." refers to inspection of incoming materials used in the production, of incoming parts and acessories, of manufactured parts and automobiles, including running tests.

\* \* \* The designing of new models was stated to be included under the item "Development and Testing Expenses".

All of the manufacturer's production costs are listed in exhibits A and G, annexed to said collective exhibit 1. Inasmuch as the only items in dispute are those described by the German words "Entwicklung, Versuche," and "Kontrallstellen," no useful purpose is served in providing a more complete statement of the figures therein listed, other than to show that apparently the actual general expenses for the four models, exclusive of the disputed items, were, respectively, DM 412, DM 502, DM 522, and DM 432.

The statutory basis of value which, it is agreed, was the proper basis for the determination of the value of the subject cars is cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, which provides as follows:

COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

From a purely mathematical standpoint, except in the case of the Isabella Combi, it is clear that if either item is considered to be an element entering into the usual general expenses rather than into the cost of materials and fabrication, the actual general expenses will exceed the statutory minimum of 10 per centum of the cost of fabrication, and the resulting computations will provide a lower cost-of-production value than that returned by the appraiser. Whether such reallocations are warranted is the issue to be resolved in this case.

By reference to a German-English dictionary, counsel for plaintiff submits for the court's consideration a translation of the item "Entwicklung, Versuche" to be, literally, "Development, Experiment,"

more freely, "General Development and Experimentation, (continuing research.)" So interpreted, it is claimed that this item constitutes a capital outlay, not at all a part of production costs, which should not have been included in the computation of value on a cost-of-production basis. Alternatively, it is claimed that continuing research more properly responds to characterization as a general expense than one directly allocatable to the cost of fabrication.

The item designated as "Kontrallstellen," or "Inspection stations labor," is claimed to be a general item of overhead, not entering into the unit costs of material and fabrication, which as a matter of "good accounting practice and sound business application" should be considered a general expense attributable to the overall output.

Counsel for the Government asserts that the item "Entwicklung, Versuche," as interpreted in defendant's collective exhibit 1, and as calculated by the appraiser, includes the cost of production designs, and that, since it does, the principles of *Oxford University Press, N.Y., Inc.* v. *United States*, 36 CCPA 102, C.A.D. 405, and *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, A.R.D. 9, require this item to be chargeable as a cost of fabrication. It is further contended that, inasmuch as the charges for inspection embrace inspection of materials and parts used in the production of the finished automobiles, the appraiser properly included this factor in the cost of materials and labor.

Involved in *Oxford University Press, N.Y., Inc., supra*, was the question of whether certain nonrecurring printing costs, such as costs of composition, editorial and correction services, proofreading, plates, translations, indexing, permission fees, and royalties, should have been included in the cost of printing 20,000 copies of the Oxford Dictionary of Quotations, the amount actually printed at or prior to the date of exportation, or should have been spread over the cost of 65,000 copies, the number of copies estimated to constitute full publication. The court held that since at the time of exportation there was no evidence that any more than 20,000 copies of the book were to be printed, all of the nonrecurring costs were properly charged to the initial printing of the 20,000 copies.

Of particular interest to the present case is the fact that the cost of the plates from which the sheets were printed was a charge attributable to the cost of fabrication, rather than a general expense.

The *Ford Motor Company* case, *supra*, stands for the proposition that the cost of pattern equipment used in the production of iron castings is a cost of fabrication within the contemplation of subdivision (1) of section 402a(f), *supra*. In reaching that conclusion, the trial judge observed (27 Cust. Ct. 492, Reap. Dec. 8067) :

There is ample authority in this court and in the appellate court to the effect that the costs of designs, patterns, blueprints, and molds used in the making

of articles are proper elements of the cost of production under § 402(f) of the Tariff Act of 1930 (19 U.S.C. § 1402 (f)).

Among the precedents cited and discussed as supporting the foregoing statement were the cases of *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T.D. 41503; *University of Chicago Press* v. *United States*, 24 Cust. Ct. 580, Reap. Dec. 7809; *Carey & Skinner, Inc.* v. *United States*, 3 Cust. Ct. 600, Reap. Dec. 4663; *Lionel Trading Co., Inc.* v. *United States*, 24 CCPA 432, T.D. 48900.

Accordingly, there can be little doubt that the cost of automobile production designs is properly included within the cost of fabrication and processing, whether or not such designs are physically employed as processing equipment, and if the item "Entwicklung, Versuche," includes designs for new models, under the circumstance that there is no further breakdown, as between design on the one hand and general development and testing on the other, which latter conceivably might respond to designation as an overhead expense, the appraiser properly added this item to the other costs specified in section 402a(f)(1), *supra*.

In considering this aspect of the case, it is apparent that a translation of words meaning literally "development," "experiment," as connoting "General Development and Experimentation (continuing research)," constitutes as great a departure from their plain intendment as, it is alleged, does the appraiser's translation into the phrase "Development & Testing including design." But it is not thought necessary here to consider the verbal refinements involved in the translation of this German expression, for the reason that, as submitted for decision, the record contains evidence of the meaning to be ascribed to the particular words in issue.

By agreement of the parties, the certified report of Arno Hellthaler, acting senior customs representative, of Frankfurt, Germany, was received in evidence as defendant's collective exhibit 1. As heretofore observed, the report sets forth the manufacturer's understanding that the designing of new models is included under the item of "Development and Testing Expenses."

Counsel for plaintiff seeks now to repudiate this translation as clearly hearsay, and, hence, inadmissible as evidence, but the court is of opinion that the objection comes too late. Subject to certain exceptions, it is, of course, true that hearsay testimony is generally objectionable and must be denied admission when timely challenged. When, however, it is admitted without objection, "it is to be considered, and accorded its natural probative effect, as if it were in law admissible." *Spiller* v. *Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117, 130; *Agruba Trading Co.* v. *United States*, 14 Cust. Ct. 338, Reap. Dec. 6104. "When hearsay is *offered* as evidence, the onus is on the offering party's opponent to object to its admission, and if he is silent, the

incompetent evidence goes in, and may be considered by the trial court in the exercise of its sound discretion." [Italics quoted.] *W. T. Grant Company* v. *United States,* 38 CCPA 57, C.A.D. 440.

Section 2633 of title 28, U.S.C., specifically authorizes the admission into evidence, in reappraisement proceedings, of certain written material not ordinarily regarded as competent evidence in a court of law. The provision is designed to alleviate, to some degree, the onerous task of gathering evidence with respect to value from sources beyond the territorial limits of the United States. As stated in *T. D. Downing & Co. et al.* v. *United States,* 16 Ct. Cust. Appls. 293, T.D. 42873, concerning section 501 of the Tariff Act of 1922, the predecessor of this provision:

> This statute gives an evidentiary character to many things which would not be so classed in ordinary judicial proceedings. This is made necessary by the impracticability of obtaining evidence in customs matters in the ordinary way. In international commercial intercourse the Government and the importers would both find themselves oftentimes unable to make their proofs according to the laws of our country. Therefore, to facilitate commerce and the collection of customs duties, the Congress has greatly liberalized the rules of evidence applicable in such cases. The reports of consular or customs representatives in foreign countries must, necessarily, largely violate the ordinary rule against hearsay evidence. But this does not make them inadmissible. If they are relevant, they are admissible. * * * The weight to be given to such items of evidence is a matter exclusively for the trial court, and this court will not attempt, upon appeal to it, to interfere with the free exercise of such discretionary power. * * *

Where the report of a customs representative is moved into evidence by consent of the parties, it must be assumed that technical objections as to the quality and competence of its contents have been waived, and that all statements made therein may be accorded full probative force and effect. Until its evidentiary value is overcome by the weight of conflicting evidence, it possesses sufficient intrinsic worth to support affirmative findings of fact based upon its contents.

There is no evidence in the instant case to rebut the statements contained in the report concerning the item referred to in subexhibits A and G, as "Entwicklung, Versuche," and the court is constrained to hold that, since this item includes the designing of new models, it was properly considered an element in the cost of materials and of fabrication in determining the cost of production of the subject automobiles.

Moreover, in view of the explanations in defendant's collective exhibit 1 concerning the item "inspection stations labor etc." as referring to "inspection of incoming materials used in the production, of incoming parts and accessories, of manufactured parts and automobiles, including running tests," it would appear that this element is so inextricably entwined into "the process employed in manufacturing * * * such * * * merchandise," as to constitute a production cost rather than an overhead expense.

The term "usual general expenses" was defined in *United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305, as follows:

In our opinion the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts.

Under a statutory formula which separates the cost of materials and of fabrication from the usual general expenses, a charge directly involved in the completion of the finished article is one more naturally attributable to unit cost than to general output. Inspection of raw materials, of intermediate processes, and of the end product are procedures which contribute to the perfection of the commodity being manufactured. It is a necessary incident to actual production and, in the opinion of this court, this cost is one which is incurred in the course of fabrication. There was no error in the appraiser's action in so considering it.

By reason of the foregoing, this court makes the following findings of fact:

1. The merchandise involved in this appeal for reappraisement consists of passenger cars, identified as Borgward Isabella automobiles, type Sedan (Limousine), TS, TS Deluxe, and Combi.

2. Said automobiles were appraised on the basis of cost of production, as that value is defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, as shown in schedule "A," annexed to this decision and made a part hereof, plus extras in United States dollars shown in red-ink amounts as items X on the invoices.

3. The basis of appraisement adopted by the appraiser is conceded to be the correct statutory basis for determining the value of the cars under consideration.

4. The only items entering into the appraised values which are contested are those described in German as "Entwicklung, Versuche," and "Kontrallstellen," which the appraiser translated, respectively, as "Development & Testing including design" and "inspections station labor," and which he included as elements in the cost of materials and fabrication.

5. The plaintiff contends that "Entwicklung, Versuche," means "General Development and Experimentation (continuing research)," and is a capital expenditure, not an element in the cost of production, or, alternatively, it is a usual general expense within the contemplation of section 402a(f)(2); and that the cost of "inspections station labor" is also a usual general expense.

6. The record establishes that "Entwicklung, Versuche," embraces development and testing, including designing of new models, and that "inspections station labor" refers to inspection of incoming materials used in the production of incoming parts and accessories, and of manufactured parts and automobiles, as well as running tests.

The court, therefore, concludes that—

1. The proper statutory basis for determining the value of the subject automobiles is cost of production, as that basis is defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. The cost of production designs is a manufacturing cost within the contemplation of subdivision (1) of said section 402a(f).

3. The cost of inspections of materials and finished automobiles is a manufacturing cost within the contemplation of said subdivision (1) of section 402a(f).

4. The appraised values properly represent the cost of production for the subject automobiles.

Judgment will be entered accordingly.