(R.D. 11697)

TROY TEXTILES, INC. *v.* UNITED STATES

Entry No. 6295.

(Decided April 7, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Brian S. Goldstein* and *Andrew P. Vance*, trial attorneys), for the defendant.

RAO, Chief Judge: The merchandise involved in this appeal for reappraisement consists of engraved steel rollers manufactured in Japan

and used in the United States in the production of printed textile fabrics.

The imported articles are not included in the Final List of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, issued pursuant to the Customs Simplification Act of 1956. The merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit prices plus specific additions in each case, which were marked "X" and characterized as "applicable cost of designs". The design costs were obtained from a letter dated March 7, 1968 which was submitted by plaintiff to Commodity Specialist Eugene Cobb.

The parties are in agreement that constructed value is the proper basis of appraisement and that the appraisement is separable. The only issue is whether or not the costs of the designs are properly a part of the constructed value of the merchandise.

The method by which the engraved steel rollers were produced was described in an affidavit of Haruyuki Katayama, manager of the foreign trade section of N. Nomura & Co., Ltd., manufacturer of the merchandise, and in the testimony of Robert S. Moyna, an employee of Troy Textiles, Inc., the plaintiff herein, who was responsible for the purchase of engraved steel rollers from foreign countries.

From this evidence it appears that the imported steel rollers are specially engraved so that they will print fabrics with a predetermined design. A number of rollers are employed to reproduce a single design and each of the rollers reproduces the portion of the design of a given color. The designs are procured by Troy Textiles and are furnished to the Japanese manufacturer, N. Nomura & Co., Ltd. A sample of one of the designs involved in the instant case was received in evidence as exhibit 3. It consists of a piece of fabric with a floral design and an instruction sheet for the engraver. It was used as a guide in preparing the engraving to be done on plain steel rollers purchased by Nomura. According to Mr. Moyna, five rollers were made in order to reproduce the complete design. One reproduced the yellow area, one the chartreuse, one the orange, one the mustard, and one the outline.

The witnesses stated that engraving of the rollers could be done by one of several methods: The photographic method, the pantographic method, the hand method, or the mill method. Mr. Moyna testified that the simplest and oldest method was the pantographic method, which involved tracing the pattern on zinc plates and then transcribing it from the plates to the roller. When the photographic process is employed, the design is photographed and divided into the various colors which make up the pattern. The film is imprinted on the roller which is dipped in acid and etched to the extent of depth and fineness

of line necessary to duplicate the design. Engraving may also be done by hand or by the use of a steel die for each color to engrave the roller.

According to Mr. Moyna almost anything can be copied by one method or another, whether it be a picture, a geometric pattern, a floral design, or a scenic pattern. He said that Troy Textiles purchases some of its designs from designers, but also uses Christmas wrappings, sample garments, or things that have been picked up around the house.

After the rollers have been engraved, each is put into a sample machine and the print that is made is compared with the original design. That design is subsequently returned to the importer.

Mr. Katayama stated in his affidavit that the unit price for each roller for each design was shown on the invoice and represented the entire amount charged to Troy Textiles. The unit price varied slightly by reason of the difference in the engraving required for each of the patterns. Some of the designs required, by reason of the number of different colors, three rollers, others as many as seven. Each was engraved in such a way as to print a fabric in the particular design supplied by Troy Textiles but in no case was any roller engraved directly from the fabric design.

While it was necessary that the design be with the manufacturer at the time the steel rollers were engraved, it was never consumed in the production of the rollers but was always returned to Troy Textiles.

It is plaintiff's claim that the "design costs" at issue are not costs relating to designs, patterns, or blueprints of the rollers themselves, but that they are costs relating to textile designs for use as guides in the manufacture of the rollers. Plaintiff argues that while these costs constitute an element in the overall expense of the manufacture of the printed fabric, they are not part of the cost of manufacturing the rollers. It points out that each of the rollers is designed to print a single color portion of a pattern and that no one roller can print a complete multicolor pattern. Thus it is claimed that the designs are not the designs of the individual rollers but are rather textile fabric designs which the rollers will together reproduce on textile fabrics. Plaintiff states that the cost of the designs, the printing rollers, and the fabric, are all elements in the cost of producing the printed fabric and contends that while they relate to one another to a certain degree, one cannot be considered part of the cost of another.

It is obvious that all of these costs enter into the total cost of producing the final product. However, the court is here concerned with the cost of producing the engraved steel rollers. It is clear from the record that these steel rollers could not have been brought to their condition as imported without the design being present to be used as a guide by the engraver. While the whole design was not etched on any one roller, portions thereof were engraved on each roller. Without the

design, the roller would have been a plain roller which could not be used in that condition in the manufacture of printed fabric.

It has long been held that the costs of designs, patterns, blueprints and molds, which are used in the making of articles are part of the cost of production thereof within the meaning of tariff statutes. *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T.D. 41503 (1926); *Lionel Trading Co., Inc.* v. *United States*, 24 CCPA 432, T.D. 48900 (1937); *Carey & Skinner, Inc.* v. *United States*, 3 Cust. Ct. 600, Reap. Dec. 4663 (1939); *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, A.R.D. 9 (1952); *Fergus Imported Cars, Inc.* v. *United States*, 52 Cust. Ct. 437, Reap. Dec. 10675 (1964).

In *Ravenna Mosaics (Inc.)* v. *United States, supra,* it was claimed that the cost of certain plans or sketches for mosaic pictures and windows furnished to the German manufacturer was not part of the cost of producing the merchandise. The court held that it was, notwithstanding the fact that the manufacturer prepared shop designs whose expense had been included in the cost of production and the fact that the plans had been supplied to the manufacturer free of charge.

In *Ford Motor Company* v. *United States, supra,* the question was whether the cost of certain pattern equipment used in the production of the imported rough iron castings should be added to the other costs incurred in the manufacture of said articles. The pattern equipment served as the form, mold, or design from which the imported castings were forged. Without them, castings in the shape, size, and dimensions required could not have been produced. The court concluded that since the use of the pattern equipment was essential to the ultimate manufacture of the castings, such pattern equipment was an item entering into the cost of fabrication, manipulation, or other process employed in the manufacture of such merchandise. It was, therefore, held part of the cost of production within the meaning of section 402(f) of the Tariff Act of 1930.

The court pointed out in *Fergus Imported Cars, Inc.* v. *United States, supra,* that "there can be little doubt that the cost of automobile production designs is properly included within the cost of fabrication and processing, whether or not such designs are physically employed as processing equipment." It held that an item of expense which included the cost of designing new models was a part of the cost of materials and fabrication to be considered in determining the cost of production of the automobiles.

Plaintiff has cited *University of Chicago Press* v. *United States*, 24 Cust. Ct. 580, Reap. Dec. 7809 (1950), in support of the proposition that there is a distinction between the costs attributable to a final product and those attributable to separate elements thereof, and that research costs allocated to a final product, books, are not part of the cost

of printing thereof. The merchandise involved in that case consisted of unbound copies of a book. The entered value represented the cost of printing, that is, typesetting, paper and printing, and the general expenses and profit of the printer, plus packing. The appraised value also included the cost of compilation of the original manuscript, the cost of editorial corrections, and the cost of writing the introductory chapter. While the court did not accept the figure added by the appraiser which was arrived at by a comparison with costs of other books, it recognized that some expense was involved in the production of the textual material used, and restored the case to the calendar for the purpose of permitting the plaintiff to submit evidence to establish the proper cost.

There is nothing in that case or in the present record to support the position of plaintiff that the costs of the designs herein are not attributable to the cost of producing the engraved rollers. The use of the patterns was necessary for the engraving of the rollers and their cost is properly part of the constructed value of the rollers in their imported condition.

On the record presented I find as facts:

1. That the merchandise involved herein consists of engraved steel rollers manufactured in Japan and used in the United States in the production of printed textile fabrics.

2. That the imported articles are not included in the Final List of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, issued pursuant to the Customs Simplification Act of 1956.

3. That the merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit prices plus the applicable cost of designs.

4. That the imported steel rollers are specially engraved so that they will print fabrics with a predetermined design. That a number of rollers are employed to reproduce a single design and each of the rollers reproduces the portion of the design of a given color. That the designs are procured by the importer and furnished to the Japanese manufacturer, who uses them as guides in preparing the engraving to be done on the rollers. That the designs are subsequently returned to the importer.

5. That it is necessary that the design be with the manufacturer at the time the steel rollers are engraved.

6. That in its imported condition each roller is engraved with a portion of the design furnished by the importer and that the rollers, when used together, reproduce the entire design on fabric.

I conclude as matters of law :

1. That the proper basis for determining the dutiable value of the merchandise is constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That that value is represented by the appraised values, consisting of the invoice unit prices plus the applicable costs of designs.

Judgment will be entered accordingly.