CAREY & SKINNER, INC. *v.* UNITED STATES

**No. 4663.**—Invoice dated Toronto, Canada, October 12, 1937.
Entered at Niagara Falls, N. Y., October 16, 1937.
Entry No. NF 1444.

(Decided October 23, 1939)

*Tompkins & Tompkins* (*Allerton DeC. Tompkins* and *J. Stuart Tompkins* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of certain merchandise described on the invoice as—

12 curved aluminum baffles
6 curved aluminum baffles
172 straight aluminum baffles
86 straight aluminum baffles
552 clips (aluminum)
100 damper sets (iron & steel)

The articles were exported from Toronto, Canada, and entered at Niagara Falls, a subport of the port of Buffalo, New York, on October 16, 1937.

The total invoice value of $882.42 was advanced by the appraiser to $1,041.44, appraisement being based on the cost of production. The plaintiff agrees that the cost of production is the proper basis for appraisement, but contends that the entered value is the correct value on such basis.

The plaintiff offered in evidence the testimony of Henry W. Cowan of Toronto, Ontario, Canada, a consulting engineer of 25 years' experience. He testified that said merchandise was specially designed by him to fit the particular paper mill machinery in the plant of the Algonquin Paper Corporation at Ogdensburg, New York; that the component material in the imported articles was purchased by him from the British Aluminum Company of Toronto; that the invoice in evidence herein as Exhibit 1 shows the cost of said component material to be $504.54, which cost included 8 per centum Canadian sales tax; that said material was shipped by the witness to Feather & Roadhouse, of Toronto, sheet metal workers, for fabrication; and that the witness supplied the design for said fabrication.

At this juncture the witness produced an affidavit signed and sworn to by one Edward Feather of said firm of Feather & Roadhouse, which affidavit is in evidence herein as Exhibit 2. The affiant states therein that he is personally familiar with all the elements entering into the cost of production of the merchandise herein; that the cost to his firm of fabricating said articles of merchandise, including labor and general expenses, plus 20 per centum profit on said labor,. was as follows:

| | |
|---|---|
| For the 258 straight baffles and 552 clips | $136. 11 |
| For the 18 curved baffles | 59. 45 |
| For the 100 damper sets | 92. 33 |
| | $287. 89 |

and that said amount ($287.89) added to the cost of materials ($504.54) makes the total cost of production $792.42.

Attached to said affidavit (Exhibit 2) are three invoices showing the cost of fabrication amounting to $287.89, plus 8 per centum Canadian sales tax on the three items amounting to $10.89, $4.76 and $7.39, respectively, making the total cost of fabrication $310.92.

The witness then testified that he obtained the figure $882.42, the entered value herein, by adding 11 per centum to cover freight or other additional expenses that might accrue.

On cross-examination the witness testified that it was part of the arrangement with the Algonquin Paper Co. that he, the witness, was to furnish the designs for the installation of the finished machinery; that in this connection it was necessary for him to make blue-

prints which were forwarded to the Algonquin Paper Co.; that said arrangement was entirely between the witness and the said Algonquin Paper Co., the witness being the inventor and owner of the process and the engineer who designed it; that the witness computed the cost of preparing the blueprints to be $300, and that he allocated $110 of said sum to the particular articles constituting the imported merchandise herein.

The Government offered in evidence reports signed by F. R. Thropp, Treasury Representative, dated December 13, 1937, and January 12, 1938, respectively, which were admitted in evidence as Collective Exhibit 3.

It appears therefrom that Henry W. Cowan, consulting engineer, in Toronto, Canada, entered into a contract with the Algonquin Paper Corporation of Ogdensburg, New York, to furnish and install in the latter plant at Ogdensburg one Cowan vapor removal system, the said Cowan to furnish the blueprints, materials, and fabrication necessary for such installation. It also appears that the blueprints were not forwarded with the imported articles herein, but were mailed separately on October 5, 1937, to the Algonquin Paper Corporation of Ogdensburg, New York, and were invoiced at $25 to cover the actual time spent upon the tracing from which the blueprints were made. This amount, however, did not include the designing of the original drawings.

In addition to said report of Treasury Representative Thropp, the Government offered in evidence the testimony of Leslie A. Dane, acting appraiser at the subport of Niagara Falls. He testified that he made the appraisement of the merchandise herein on the basis of the cost of production; that the total value found by him amounted to $1,041.44; that he based his appraisement on the information obtained from the reports of said Treasury representative in evidence herein as Collective Exhibit 3 as follows:

| | |
|---|---:|
| Cost of materials | $504. 54 |
| Cost of Labor | 195. 56 |
| | 700. 10 |
| 10 percent for overhead | 70. 01 |
| | 770. 11 |
| 8 percent addition for profit | 61. 61 |
| | 831. 72 |
| 100 dampers and 60 runners supplied by Mr. Cowan at a cost of $92.33, plus 8 percent tax ($7.39) | 99. 72 |
| Proportionate part of Mr. Cowan's expense of $300 for preparing blueprints allocated to imported merchandise | 110. 00 |
| Total | $1, 041. 44 |

On cross-examination the witness testified that he had no personal knowledge in regard to the cost of fabricating the articles in question,

and that he based his calculations upon figures contained in the reports of said Treasury representative.

Upon this record it is evident that there is no dispute as to the item of $504.54 covering the cost of materials, nor as to the labor cost of $211.21. But counsel for the plaintiff in their brief filed herein contend that the item of $99.72 for the 100 dampers and 60 runners should not be included in the cost of production, as it was already included in the item of $504.54 and the item of $211.21 for materials and labor, respectively.

From the record I am satisfied that this contention of counsel for the plaintiff is not well founded.

Counsel for the plaintiff also object to the item of $110 for blueprints and drawings. Inasmuch, however, as the plaintiff's own witness has testified that said item was properly allocated to the merchandise herein, we are of the opinion that the appraiser was amply justified in including it in the cost of production.

The only two other items in dispute are the one for $70.01 covering overhead and the other for $61.61 for profit. These items were included by the appraiser on the theory that Henry W. Cowan was the manufacturer of the merchandise at bar, whereas counsel for the plaintiff, in their brief filed herein, strenuously contend that the firm of Feather & Roadhouse was the manufacturer, and that their overhead, expenses and profit, having been already included in the price charged to Cowan, no item of general expenses and profit of Cowan should be included.

In support of such contention counsel cite the case of *United States* v. *Guerlain, Inc.*, Reap. Dec. 4290, 73 Treas. Dec. 1498, in which this Division of this Court, sitting in review, in affirming a decision of SULLIVAN, Judge (Reap. Dec. 4132), held that the two firms (one of Baccarat and the other of Pochet) which actually fabricated certain perfumery bottles were the real manufacturers thereof and not *Guerlain, Inc.*, of Paris. I have carefully examined the cited case and in my opinion it has no application to the facts herein.

In the cited case the importer purchased the bottles in question from either Baccarat or Pochet while Guerlain, Inc., of Paris merely forwarded the orders. Baccarat or Pochet shipped the merchandise direct to Guerlain, Inc., of New York, the importer, and payment for the bottles was made by Guerlain, Inc., of New York, direct to Baccarat or Pochet as the case may be. Moreover, Guerlain, Inc., of Paris, received no commission from Guerlain, Inc., of New York, the importer. From these facts the court very properly held that Guerlain, Inc., of Paris was not the manufacturer of the bottles.

On the other hand, in the case at bar the Algonquin Paper Corporation, the ultimate consignee and the real importer of the instant merchandise, had its contract solely with Henry W. Cowan of Toronto, Canada, and had no dealings whatever with Feather & Roadhouse,

the manufacturers who fabricated the imported articles for said Cowan. All of the materials which were purchased from the British Aluminum Co. were sold and billed to Cowan and not to Feather & Roadhouse or to the Algonquin Paper Corporation, the importer herein.

Moreover, the costs both of the materials and of the fabrication were part of the contract price and were paid by the Algonquin Paper Corporation, the importer, to Cowan.

Finally, Cowan not only contracted with the importer for the designing, construction, and installation of the articles in question, but he was also the inventor and patentee thereof.

In my opinion the case of *Lionel Trading Co., Inc.*, v. *United States*, 24 C. C. P. A. 432, T. D. 48900, is here controlling. That case involved the dutiable value of certain paper boxes and glass bottles appraised, as in the instant case, on the basis of the cost of production, the item in dispute being the profit of one Corday of Paris. It appeared that Corday contracted with certain manufacturers to make the said boxes and bottles; that said Corday furnished the manufacturer with the designs which were registered by Corday with the French Government, and that Corday owned and furnished the molds to said manufacturer. In affirming the decision of the First Division of this Court, the United States Court of Customs and Patent Appeals said:

We are in agreement with the tribunal below in their holding that upon the record made, the said 28 per centum which was charged by Corday was, by the appraiser, properly added to the entered value to make up the cost of production which constituted the dutiable value. The record shows that the 28 per centum was added by Corday as profit and overhead. It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and moulds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. The term "in manufacturing or producing such or similar merchandise" in paragraph (1) of section 402 (f), *supra*, must be read in connection with the whole provision concerning cost of production.

Upon the entire record, I find that the correct cost of production of the merchandise herein is as follows:

| | |
|---|---:|
| Cost of sheets of metal | $504. 54 |
| Cost of dampers, runners, etc | 99. 72 |
| Total cost of materials | 604. 26 |
| Cost of labor | 211. 21 |
| Cost of materials and labor | 815. 47 |
| General expenses not less than 10% | 81. 55 |
| | 897. 02 |
| Profit, not less than 8% | 71. 76 |
| | 968. 78 |
| Allocation of cost of production of blueprints | 110. 00 |
| Cost of production | 1, 078. 78 |

I therefore find that $1,078.78 is the proper dutiable value of the merchandise herein.

Judgment will be rendered accordingly.