(R.D. 11725)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

Entry No. 05-7792.

(Decided November 18, 1970)

*Barnes, Richardson & Colburn* (*David O. Elliott* and *Joseph Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Brian Goldstein* and *James Caffentzis,* trial attorneys), for the defendant.

FORD, Judge: This appeal for reappraisement contests the dutiable value of an importation of an article described on the invoice as a "Switching System #2A". The merchandise was appraised on the basis of cost of production as set forth in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at $237,482.48 Canadian funds.

Counsel for plaintiff do not contest the basis of appraisement, cost of production, but contend alternatively that the appraised value in Canadian funds is either $37,089 if the costs of development and design are not considered part of the dutiable value or $130,576.47 if part of the cost of production is based upon allocating such costs over two models and not just the importation involved.

The statutory provision involved reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The record consists of a stipulation by and between counsel for the respective parties that the imported merchandise appears on the final list of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521. The balance of the record is documentary. Affidavits of Mr. W. C. Benger, director of transmission development at the Research and Development Laboratories of Northern Electric Co., Ltd., and Mr. M. J. Lyons, manager-accountant of said firm, were received in evidence as plaintiff's exhibits 1 and 2, respectively. Defendant offered and there was received in evidence as defendant's exhibit A, a Treasury Department representative's report.

The affiant, Benger, stated that he was in charge of Northern Electric's work in developing a small call distributing system under the contract between his company and Bell Telephone Laboratories hereinafter referred to as B.T.L. The end product of his work was the design of the system in drawings and specifications in a form suitable to be given to a manufacturer for production purposes. The technique employed in proper design is the construction and testing of test models. Two such models were contemplated and were actually constructed. One model was exported to the United States for the purpose of field testing and the other remained in the laboratory of Northern Electric for further testing and observation based upon the experience obtained from the model in the field. Both models were ultimately scrapped.

There were no other models of the same class or kind manufactured by Northern Electric and no other manufacturers of articles of the same general character or the same class or kind in Canada.

The next witness, M. J. Lyons, testified by means of an affidavit that by virtue of his position he was familiar with the cost of production of the Small Call Distributing System produced under the contract with B.T.L. The books and records are maintained under his supervision.

Mr. Lyons stated in plaintiff's exhibit 2 that before the production of the model shipped to the United States, it was contemplated that two models be produced and two were in fact produced. The total design and development cost for the two models, including drawings and specifications, was Canadian $173,895. The cost of all materials and of all fabrication, manipulation and other processes employed in manufacturing the switching system was Canadian $22,797, and the cost of containers was Canadian $200. Based upon the books and records, the affiant stated that no profit was made under the contract but the amount of profit normally added in the case of the same general class or kind would have been Canadian $4,813. The general expenses were Canadian $9,280 which included all factory overhead, administrative overhead and all other overhead as well as the usual product development charged to manufacturing operations.

The issue presented herein for determination is whether research, design and development costs are part of statutory cost of production. Plaintiff in its primary argument concedes that the cost of patterns, molds, designs or blueprints used in the production of imported merchandise may properly be considered as elements of cost of production of the merchandise as prescribed by the statute. *Ford Motor Company* v. *United States*, 27 Cust. Ct. 492, R.D. 8067 (1951), *modified*, 29 Cust. Ct. 553, A.R.D. 9 (1952), and cases cited therein. However, it contends under the factual situation involved herein such costs are not subject to inclusion in said cost of production.

It is the position of plaintiff that by virtue of the fact that two separate contracts were entered into, the parties contemplated two separate commodities. The contract for research, design and development contemplated the production of a test model and a finished design embodied in specifications and drawings. The second contract called for the production and price of the test model. The case of *Oxford University Press, N.Y., Inc.* v. *United States*, 36 CCPA 102, C.A.D. 405 (1949), relied upon by plaintiff is merely dicta and in any event not controlling.

While the record establishes that two *bona fide* contracts were entered into by the parties for the respective commodities, whether fungible or not, the position with respect to its primary contention is untenable. The determination of cost of production is an effort to arrive at a substitute foreign market value. *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378 (1933). The statute prescribes all costs which are to be included in arriving at such value and was intended to include every element of cost which goes into the manufacture or production of the article. *Ravenna Mosaics (Inc.)* v. *United States*, 49 Treas. Dec. 699, T.D. 41503 (1926); *University of Chicago Press* v. *United States*, 24 Cust. Ct. 580, R.D. 7809 (1950); *Carey & Skinner, Inc.* v. *United States*, 3 Cust. Ct. 600, R.D. 4663 (1939); *Troy Textiles, Inc.* v. *United States*, 64 Cust. Ct. 654, R.D. 11697 (1970).

There is no distinction in my mind between molds, patterns or designs, and the product of research, design and development. It matters not that the manufacturer did not pay for this research but was in fact compensated for its work under a separate contract anymore than if the molds or patterns were prepared by the importer and given free of charge to the manufacturer. The intent of the statutory provision is to ascertain every element of the cost of manufacture. In the absence of research, design and development, the model could not be produced. Accordingly, the cost of such must properly be included in the statutory cost of production whether or not it was incurred by the manufacturer or was the subject of a separate contract.

The question thus remaining is the alternative position of plaintiff. Since such cost is part of the statutory value, is it to be prorated over

the two units produced or applied only to the single unit imported? I believe the former position would more accurately reflect the statutory cost of production. In the *Oxford* case, *supra,* I note there were actually printed 20,000 copies over which the costs were allocated. The importer contended that 65,000 copies were to be printed and hence the allocation should have been made over such number of copies. The court held that at the time of exportation only 20,000 copies had been printed and that there was no evidence of a demand for the larger figure or that such number were to be printed. I also note the importation involved in that case was 5,000 copies yet the allocation of costs was on 20,000 copies.

In the case at bar, the evidence etsablishes to my satisfaction that not only was the intent of the parties to make two models but, in actuality, two models were made. The mere fact that only one model was exported does not require the entire cost to be attributed to the model imported. A true cost of production would require the cost be prorated over the two models and I so hold.

The cost of the material and fabrication in accordance with the statute is amply set forth in the testimony of Mr. Lyons in plaintiff's exhibit 2 and confirmed in defendant's exhibit A as Canadian $22,797. Since I have held the cost of research and development is to be prorated over the two models, the sum of Canadian $86,947.50 must be added. This figure represents one-half the cost of the development and research as indicated by Mr. Lyons in plaintiff's exhibit 2. The total of these figures is Canadian $109,744.50. To this figure the statute requires the addition of usual general expenses in the case of such or similar merchandise, not less than 10 percent. The affidavit, plaintiff's exhibit 2, of Mr. Lyons states such general expenses as being Canadian $9,280 which is corroborated in defendant's exhibit A. This figure does not meet the statutory minimum of 10 percent which in this instance amounts to Canadian $10,974.45. The cost of all containers and coverings prescribed by the statute is established to be Canadian $200 as established by plaintiff's exhibit 2 and corroborated in defendant's exhibit A. Plaintiff's exhibit 1 and defendant's exhibit A establish there are no other manufacturers in Canada of this type of merchandise. Plaintiff's exhibit 2 and defendant's exhibit A establish that no actual profit was made but the figure of Canadian $4,812 would be the profit the manufacturer would make for this class or kind of merchandise. This figure does not meet the minimum statutory requirement of 8 percent of cost of material, fabrication, etc., and general expenses. Accordingly, this sum is Canadian $9,657.52. The total cost of production is Canadian $130,576.47.

Upon the evidence in this case, I find the following facts:

1. That the merchandise under appeal consists of a test model for a small call distributing system, invoiced as "Switching System

#2A", manufactured in Canada by the Northern Electric Company, and imported into this country in June 1962.

2. That the merchandise is described on the Final List published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956.

3. That the merchandise was appraised on the basis of its cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Custom Simplification Act of 1956.

4. That neither party disputes the basis of appraisement.

5. That before production of the instant merchandise, it was contemplated that two test models would be produced and two were produced.

6. That the cost of materials and fabrication of such merchandise, within the meaning of section 402a(f)(1) of the act, as amended, is $109,744.50 (Canadian currency).

7. That the usual general expenses incurred in producing such merchandise, within the meaning of section 402a(f)(2) of the act, as amended, is $10,974.45 (Canadian currency).

8. That the cost of containers and all other incidental expenses, within the meaning of section 402a(f)(3) of the act, as amended, is $200 (Canadian currency).

9. That the amount for profit, within the meaning of section 402a (f)(4) of the act, as amended, is $9,657.52 (Canadian currency).

I therefore conclude as matters of law:

1. That cost of production, as defined in section 402a(f) of the act, as amended, *supra*, is the proper basis of appraisement.

2. That expenses incurred by the manufacturer in developing specifications and drawings for the design of a small call distributing system are properly part of the cost of production of the imported test model and are properly allocable between the production of two such test models.

3. That such statutory value for the imported merchandise is $130,576.47 (Canadian currency).

Judgment will be entered accordingly.